The next item is bill 14-191-1991, Insurance Company of the State v. Great Northern Insurance Company. Mr. Bayer? Your Honor, the basic facts here are not in dispute. There are two insurance companies here that provided workers' companies with insurance. Both policies covered the climate issue, but only one insurer has made all payments on that claim, paying all costs and all the indemnity, and it continues to do so indefinitely into the future. The other, Great Northern, has refused to pay anything. It's precisely in these circumstances that a claim for equitable contribution lies, where there are two insurers, each of whom has a coverage obligation, but one is paid a disproportionate amount. Now, Great Northern's argument below and in this Court is that there aren't two equal co-insurers here because they had no coverage obligation, and the reason they say they have no coverage obligation is that it's insured, progression didn't provide notice and cooperation and didn't tender the claim. That position is contrary to Massachusetts law, which by statute and by many case law for many years, precludes an insurer from disclaiming coverage on the ground that it's insured, a notice requirement or other kinds of conditions precedent to coverage unless the insurer proves actual prejudice from the violation. Two things about your position puzzle me some. One is, why hasn't the industry handled this through policy terms? In other words, why doesn't your policy say right in it that you have a right to equitable subrogation? This has been around for over 100 years. Well, Your Honor, it's possible going forward that the insurers could do that, but there's nothing in the law requiring that now. And under current Massachusetts law, it's not only not required, but the law goes the other way. The law essentially says the burden is on the other insurer to show that it was prejudiced. And in case law in Massachusetts, case after case, not just the insured, but plaintiffs, co-insurers have been allowed to recover on another insurer's policy even where that insurer says, but the insured company didn't provide me with notice and didn't tender the claim. And when you talk about case law, are you talking about case law at the Massachusetts appeals court level? Yes. Like peerless? Yes. Has the SJC weighed in on this? Yes, Your Honor. In both the Johnson Controls case and in Darcy, both of those cases involve claimants who were seeking to recover on an insurer's policy where the insurer provided no notice and didn't tender a claim. But those are the notice prejudice rule. Are they directly on point here? It seems in a way you have two insurance companies. So in Johnson Controls, it was a plaintiff that provided notice and sought recovery. In Darcy, it was both the plaintiffs and the co-insurer. So in Darcy, it was the general contractor's insurer who was actually seeking recovery against the subcontractor's insurer. The insured, the subcontractor, never provided notice, never tendered the claim. And the insurance company's claims are also allowed to go forward for contribution in that case. And Darcy basically, the Supreme Court in Massachusetts and Darcy not only allows it to go forward, extends the notice prejudice rule to provisions requiring cooperation and rejects the insurer's argument that in extreme cases there should be a presumption of prejudice and says no, that would shift the burden and we're not going to do that. This case is a little bit different because the insured made a specific decision not to seek coverage from the other insurance company. And is that a difference without a distinction under the case law you're citing? I think it makes no difference, Your Honor. I don't think it is part of the law in equitable contribution that you have to show not only that there were two insurers with a coverage obligation but that coverage was requested. That might be a defense to a claim that there was a bad faith refusal to defend, but it doesn't extinguish a coverage obligation for purposes of equitable contribution. But I guess I'm just trying to reason through why. If I as a purchaser of insurance decide to purchase two separate policies and I'm paying the premium and the premiums for each policy covers a total loss and I make an election that I'm only going to tap one policy versus the other and the one that I choose to tap has full coverage, why can't I as an insurer, maybe for business reasons, I don't want my premiums to go up, why can't I make that decision? Well, Your Honor, that is an... Because it's not as if you're covering something that you haven't been paid premiums to insure the risk. No, no, that's true as well. Both insurers here were paid to cover the exact same risk. So they stand in the same position. Your point is really essentially the point of selective tender. Really it's the point of the one case that adopts it wholly, which is the Washington court in Enumclaw, which is distinguishable on its facts, but does embrace that concept. Other courts around the country have addressed that very argument and have rejected it. And there's no law in Massachusetts that suggests that Massachusetts would embrace selective tender. And there's a lot of law in various strands of Massachusetts decisions that suggests Massachusetts would not embrace selective tender. Is this a case we should certify to Massachusetts? You know, Your Honor, we would not oppose certification because I'm confident there's no law in Massachusetts that would support Great Northern's argument. I think in the absence of that law, and law I'd be happy to walk you through, I think it's unnecessary here. I think the district court made an extraordinary leap in concluding that Massachusetts would adopt selective tender. So the one case that actually is on point is the Utah Supreme Court decision, which addresses the issue in the context of a workers' compensation case. And in that case, there are two insurers that have coverage. The insurer that steps up to the plate like ISOP did here and is paying the claim, discovers there's another insurer, seeks to file an equitable contribution claim against the second insurer. And the second insurer says, but our insurer didn't give us notice, that didn't tender the claim. And in fact, our guy told us not to pay. So it is your argument. And the Utah Supreme Court rejects that and says that's inconsistent with the policies behind our workers' compensation system. And the same policies apply here, that you want an insurer to step up immediately and start making payments. If you allow selective tender in that context, you create incentives for delay where an insurer may wait to see if another insurer might be in the wings. It apportions liability fairly and equitably. Equitable contribution is, of course, not a contract claim. It's an equity claim. You lost me because in answering Judge Thompson's question, the only policy point you cited at all other than citing some cases is this notion that if I have two policies and I just call one of them, that one might delay, hoping that I'll go after the other one. Well, if they delay, then I go after the other one. And that's where I am. I'm going after both. You want us to adopt as a policy rule rather than to say that Massachusetts would adopt this policy rule. But I can't even try just to go after one. I have to go after both is the rule you're saying because there will be equitable segregation under both policies no matter whether I as the insurer want it or not and may not want the, for example, experience charged to the other policy. Well, I think I'd frame it a little differently, Your Honor. I don't think we're seeking a new rule that would require an insurer to tender to both. I think what we're doing ñ Well, you're saying the ramifications. You're saying no matter what the insurer wants to do, the payments are going to come from both policies. Yes, Your Honor. I'm saying if both insurers have a coverage claim, the insurer's choice in that context does not dictate the outcome of a dispute between the two insurers. And I think that is the law in Massachusetts. And I think it's the law in virtually every state in the country except a very small few that have adopted the position we're discussing now. And why? Why don't I? I've got one policy, so I go after that. I'm going to be extra. I'm going to have two. That way I get a choice. And I'm paying full premiums on both. I get a claim, and I look. I think I'd rather go on this one because my experience rating is newer under that one. That company handles things differently. They have their adjusters that are more generous, so I'm just going to go with them. Why do I lose that right because I bought a second policy? Well, first of all, we have no idea what actually happened here or what the circumstances are. It may well be that they were simply unaware of a second policy. It was an international policy. Often in these circumstances, an insured is not making the kind of informed choice you're suggesting. But even if the insured is. Well, no, that's very unclear on this record, Your Honor. That is not in the Rule 56-1 statements that the parties provided. It's not in the affidavits that Great Northern provided. That's actually just in the letter denying coverage that Great Northern wrote. But even if it were the case. Right, but even if it were the case, I think the law of equitable contribution and the policies behind it, as articulated in a number of Massachusetts cases and in the Utah Supreme Court case, is that it is a better policy to allow insurers to step up to the plate knowing that they would be able to seek equitable contribution from other co-equally, co-obliged insurers than it would be to simply let an insurer dictate the outcome, both because it's fairer. That doesn't make any sense, because if I paid you, you don't have a right not to cover the loss if it's a covered loss. I don't know why there would be an incentive if you're fully paid that you wouldn't step up to the plate. And it seems to me that there would be a bad faith claim if you didn't. Your Honor, that's true, and that's why ISOP did step up to the plate, and that's what you want. But that's equally true of Great Northern. There's no difference between the coverage obligations between these two insurers, simply because the insured gave notice and tendered to one doesn't extinguish the obligation, the coverage obligation of the other. And, you know, in other lines of Massachusetts authority, for example, in the long-tail claims, when there are – may I finish the point, Your Honor? You may finish your sentence. What's that? You may finish your sentence. In that context, the Massachusetts Supreme Judicial Court chooses the pro rata approach, rejects the other approach specifically because it burdens one insurer with all of the obligation and leaves the other insurers to walk away scot-free. Given that line of authority in other cases in Massachusetts, there's nothing to suggest that Massachusetts would adopt that approach. Let me ask one further question. Does your policy require that your insurer notify you of whether it has any other coverage? I don't believe so. Thank you. Because some policies do. Some policies do have that provision. Good morning, members. Good afternoon. My name is Jennifer Sheehan, and I'm representing Apelli Great Northern. And the position that ISOP is asking the court to take in this case contravenes Massachusetts law, it contravenes Massachusetts principles of contract interpretation, and the district court was correct in finding that equitable contribution does not apply under the circumstances of this case. In fact, not only is ISOP's position contrary to Massachusetts law, it's harmful to the insurers because it's asking the court to allow ISOP, a non-party to an insurance contract, to override the decisions made by the insurer who is a party to the contract and has paid for that contract for the exclusive benefit of ISOP and to the detriment of the insured who had made a business decision not to invoke only one of multiple policies that it may have had. And the district court correctly recognized that recognizing equitable contribution under these circumstances would result in a situation where an insurer has to reimburse another carrier for a claim that it had no obligation to pay its insured. I'm having trouble understanding your argument based on the briefs below and based on your brief to us. Sure. As I read the peerless case in Massachusetts, it says if there is coverage under two policies, then there is equitable contribution. I read your brief below and I kind of read your brief on appeal as your only argument is that you're simply saying there isn't coverage under our policy because our policy has a notice requirement and the notice wasn't given. I don't see you saying that if there is coverage under our policy, equitable contribution wouldn't apply, notwithstanding peerless. Am I reading your argument correctly? Yes, that's correct. And I would note that in peerless, as in many of the cases cited by ISOP in support of its position, the insurer did in fact tender its claim to two insurers. And that's what happened in peerless. Let me take you to your argument then. If I'm understanding it hinges entirely on whether there is coverage under your policy. It does not hinge on the question Judge Thompson and I was asking about, which is when there is coverage under both policies, should there be equitable separation? Right. I mean, Great Northern does not dispute that the doctrine, that Massachusetts has recognized the doctrine of equitable contribution and that it is appropriately applied when both insurers have underlying obligations to the insured. So let me take you then to what I understand is the linchpin of your argument, which is that the lack of notice by the insured means that there's no coverage under the policy. Right. And don't you run headlong into the notice prejudice rule then? As I understand it, that's a rule of substantive law that says, even if in fact I argue the case of the U.S. Supreme Court in which this was an issue, where it says the absence of notice, no matter what the policy says, does not defeat coverage unless there's prejudice to the insurance company. But it doesn't defeat coverage to the insured. And I think that's a big difference here, is that ISOP is conflating statutes and common law, which is for the purpose of protecting the insured and preventing an insurer from disclaiming coverage that the insured has paid for, under circumstances where the insurer was not prejudiced in any way by the late notice or the delay in cooperation, whichever it may be. Here, this is not a question. The insured in this case has not sustained any prejudice. The claim has been covered in full. Let me interrupt you, because the notice prejudice rule looks to whether the insurance carrier, not the insured, it looks to whether the insurance carrier has been prejudiced, doesn't it? Right. But as to the insured's failure to timely notify. Okay, so let's assume the insured didn't timely notify your client. So that's a given. Yes. What evidence is there in the record as to how your client was prejudiced by that complete lack of notice? You know, we never got to that bridge. Probably in the information that I have, there probably wouldn't have been prejudice had the insured tendered the claim at a later date. But you do have notice. It just wasn't given by the insured. And you don't have prejudice. So can you cite any case in which an insurance company has notice, albeit not from an insured, has no prejudice as a result of the delay in the notice, and yet can take the position that there's no coverage under the policy as a result of the non-prejudicial late delay from someone other than the insured? Well, I would say that even cases in this court, the Hartford Fire case in which there were multiple insurers, I think another insurer tendered the insured's claim to a third insurer who, based on a policy provision, said there's no coverage under this policy. And that's where it ends. Once there's no coverage under the policy, you don't get to the were you prejudiced or not by the late notice. The late notice was the insurer prejudiced because there's no coverage obligation there. Are you taking the position that there's no coverage or that there was no coverage triggered? There was no coverage triggered. That's our position is that there are provisions in the policy which were clear to the insured. They were several different places in the policy about notice, cooperation, records that had to be provided. And I would disagree with my colleague that the record, I think there is evidence in the record that this progression was well aware that it had multiple policies. And when Great Northern did learn of the claim in October 2011, it contacted the insured to see whether perhaps they were unaware that they had the policy and they were informed that they had never intended to tender the claim to Great Northern. They had never authorized ISOP to tender the claim to Great Northern. So for whatever reason, progression had made a business decision, number one, to obtain and pay premiums for two different policies which had some intersecting, covered some of the same losses potentially. And when a claim arose, they made a decision. And there are a number of reasons that a business would do this, to only invoke coverage under one of the policies. This is why I'm confused by your brief because it seems to me what you've done is you've worked yourself around the barn to arguing selective notice, selective tender rule because you basically said if the insured and only the insured doesn't contact you and ask for coverage, then there's no coverage. And therefore, there's no equitable subrogation. Isn't that exactly the equivalent of the selective notice rule? You know, we don't view the case in such a dogmatic fashion. Okay, well, let me stop you there to see how dogmatic it is. Can you give me a single example in which that rule would dictate the outcome of the case and your approach would dictate a different outcome either way? I'm sorry, I'm not sure I understand your question. Sure. We've got the selective tender rule, I believe it's called. And it seems to me you're basically arguing from that. And I understand that you say, well, not quite. So if it's not quite, that means there should be some scenario where the selective tender rule would lead to a different result than would our adoption of your rule. And I can't think of any scenario where your rule and the selective tender rule wouldn't produce exactly the same result. It would all hinge in every case on whether the insured decided to invoke coverage under the second policy. And that is probably correct. So, I mean, I guess in terms of our approach to this case, it's not advocating that Massachusetts should adopt this named rule. But we believe that, first of all, it's a baseline principle, and this court has held that, it's a baseline principle of Massachusetts contract interpretation that the intent of the parties is determined by the unambiguous language of the policy. And here the policy was unambiguous that the insured had to provide notice, had to provide records at different stages and other kinds of cooperation requirements. And this insured knew that. And it chose not to do that. So to the extent that the selective tender approach allows an insured to decide which of its policies to use, and to the extent that our position is that that approach and allowing, first of all, looking at the terms of the contract and then determining the party's intent and then going from there to the party's intent to invoke the contract or not invoke the contract, that does comport with Massachusetts law. So, you know, if by extension the selective tender rule, however you want to call it, reflects those principles, then yes, then that is Great Northern's position that that's the appropriate approach here. What's your position on certifying this matter to the SJC? I mean, yes, certainly we wouldn't oppose it either. I mean, I do, we do dispute. I just want to touch on a couple of things, which is that the long-tail cases that ISAB has pointed to as predictors of how the Supreme Judicial Court would rule on this are in opposite because those cases cover, this is a known loss that happened at a, we know what the loss was, we know when it occurred. Those long-tail cases, it's a different approach because it's an unknowable loss and it's continuing and so there's no way of knowing which policies were invoked. So I would reject that as a guidepost of how the SJC would rule. You know, Massachusetts has not squarely taken on this issue under these circumstances. I'm sorry, I didn't look beforehand, but does your policy have a primary, secondary provision in it? It has, I believe it has an other insurance clause. But again, I don't believe that that clause is relevant here because it has to do when there are other, or actually it's kind of irrelevant in our policy, but as to that other insurance clause that might exist in ISOP's policy, it doesn't, it's not relevant because that refers to insurers, other insurers that have obligations and our position is that we have no obligation. Our obligations under the policy were never triggered by the insured and they were intentionally not triggered by the insured. And I would just also just distinguish the Johnson controls and the Darcy cases that ISOP mentioned because those are reach and apply cases, they're not equitable contribution and even though it wasn't the insured tendering the claim in those circumstances, it was still going to be the insured that benefited from the coverage decisions made by the insurer. How do you deal with the Peerless case that now Chief Justice Gants wrote when he was on the appellate court? As I look at that case, he hinges equitable contribution not on whether there is coverage under the policy, he hinges on whether the insured is barred from pursuing an insurance claim against the other insurance company. And I think we would all agree that the insured here was not barred from pursuing a claim against your client had it wished to do so. Right. So how do you, do you want, does adopting your position essentially mean that we would need to reject the Peerless decision from the Massachusetts Appeals Court? You know, I don't think it does because as I mentioned earlier, I think an important distinguishing characteristic of Peerless was that the insured tendered its claim to both insurers. One insurer failed to respond at all. The other insurer did respond. I think there were some questions as to the extent of coverage but ultimately defended and settled the claim. And in that case, the other insurer just simply was aware, the insured had done everything that it was supposed to do to invoke its policy and the other insurer just didn't respond. And I think that was the underpinning of Judge Gantz's decision. But I also note that Judge Gantz, even in that case, he said absent compelling equitable circumstances, the doctrine of equitable contributions should not be used to override policy languages or to impose on an insurer an obligation that doesn't exist in the policy. And I think that's exactly what's happening here. I mean, it's all hypothetical because if they had only had one policy, they would have tendered it. But if Progression had never tendered its claim to Great Northern at all, Great Northern has no, there's no affirmative obligation on an insurance company to check in with the insurer to see if any accidents have happened. I mean, the notice provision is an important provision and Progression knew that and they chose not to invoke it. And I think that's very important here because what ISOP is asking the court to do is to say even when there's a consumer of insurance whose business, they've paid for two policies, they know what they're doing, they know what policies they have, they know what policies are covered, and for many legitimate reasons, they make a decision not to tender. Isn't equitable contribution the norm nationwide? And my guess is your client itself has probably had situations where it seeks equitable contribution in states that recognize it, which are almost all of them. Probably. And again, Great Northern doesn't dispute that equitable contribution is a recognized doctrine and has been addressed in Massachusetts. But what we're saying here is that the linchpin of equitable contribution is that both insurers have obligations, underlying obligations to the insured. And that's missing here. Thank you. Okay, thank you. I think there are two problems with Great Northern's argument here. The first, Judge Payette has very clearly articulated the notion that Great Northern has no coverage obligation here or no coverage trigger. It runs squarely into established Massachusetts law requiring a showing of actual prejudice, which really could not be done here and has been waived, in fact. What about her argument that you don't get to the prejudice question until the insured gives some notice, and then if it's late, you get to notice prejudice? Well, there's just no case law in Massachusetts adopting that proposition. The insured didn't give notice in Johnson Controls. The insured didn't give notice in Darcy. There are many cases in which that situation occurs, and the court is very clear it's still the burden on the insurer that's seeking to disclaim coverage on conditions precedent in its policy to demonstrate actual prejudice. That wasn't done here and couldn't be done here. So on a pure equitable contribution, construing the policy and applying it according to Massachusetts law, I don't think Great Northern can prevail without fundamentally altering Massachusetts law, which is why Great Northern slips into a kind of sub rosa argument for selective tender. But they cannot cite to you a single case in Massachusetts that even suggests that the Massachusetts Supreme Judicial Court would adopt that doctrine. And there is precious little in the United States today, precious little law in favor of that doctrine, and courts all over the country, California, Ohio, New York, Utah, have rejected it. I want to point out... Let me ask you a question. If I have an insurance policy and I make a claim, that at some point down the road can affect my rate for that policy. Isn't that correct? It may. Well, it usually does. Isn't that correct? It may well. So if I make a calculated business decision that I want to keep my rate low and not trigger coverage, if you were forced to pay, to make a contribution, would you be allowed to raise the rate? I don't know, Your Honor. I mean, those are... I'm not sufficiently versed in how insurance companies determine rates. But in workers' comp, in workers' comp in Massachusetts, there are no policy limits. And the way the system works is once there is a claim in Massachusetts, the insurer becomes liable immediately to the worker. It doesn't go through the employer. It doesn't go through the insured. Once there is a claim in Massachusetts, a workers' compensation claim under Massachusetts law, the insurer becomes liable to make payments directly to the worker. So this concept of what the employer, the insured in this case, the employer does or does not do in notifying its insurer, really doesn't square well with workers' comp law, which is one of the reasons, among many, that the Utah Supreme Court squarely rejected this argument in the Utah Supreme Court case covering it. I do want to point out one other case that might be relevant here, which is the Connolly Brothers case, which is a Massachusetts District Court case applying Massachusetts law. And I raise it because of your question about could an insurer build it into its policy? Well, that's sort of what happened in Connolly. The insurer actually built a kind of selective tender policy into its insurance policy and said, if you, the insured, tender the claim first to another insurer, then we don't have to pay. We don't have to do anything because it's at our option now. And the District Court looked at the lines of authority in Massachusetts law and said, that provision is void as contrary to Massachusetts policy because you could never do that without demonstrating prejudice under Massachusetts Notice of Prejudice rule. So in fact, where insurers have tried to do that, Massachusetts law precludes it. And that is consistent with the law in most states in the country. Thank you. Thank you, Your Honor.